**UNITED STATES DISTRICT COURT**
**MIDDLE DISRICT OF GEORGIA**
**VALDOSTA DIVISION**

**UNITED STATES ex rel.**
**JOEL COMPTON,**

　　　　**Plaintiff-Relator,**

　　　　**v.**

**CIRCLE B ENTERPRISES, INC.,**
**et al.,**

　　　　**Defendants.**

**Civil Action No. 7:07-cv-32 (HL)**

# ORDER

This case is before the Court on Defendants' Motions to Dismiss (Docs. 58, 60, 61, and 64) and Motion for Allowance of Oral Argument (Doc. 95). Also before the Court is Defendant Circle B Enterprises' ("Circle B") Motion to Strike or Exclude Declaration of Relator (Doc. 94).

For the reasons discussed below, the Motions to Dismiss are granted. The Motion to Strike or Exclude Declaration is granted in part and denied in part. The Motion for Allowance of Oral Argument is denied. Plaintiff-Relator, Joel Compton ("Compton") shall have thirty days from the date of this order to amend his complaint.

## I.　　BACKGROUND

Compton is a former employee of Circle B. On March 29, 2007, Compton filed a *qui tam* action on behalf of the United States in which he alleged that Circle B and others presented false claims to the government in

violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729.  Compton named Circle B, Jackie Williams, Patricia Williams, Destiny Industries, L.L.C. ("Destiny"), River Birch Homes, Inc. ("River Birch"), Waverlee Homes, Inc. ("Waverlee"), Liberty Homes, Inc. ("Liberty Homes), Phil Fowler, Delmo Payne, and Gerald Terrell as Defendants.  As required by 31 U.S.C. § 3730(b)(2), the complaint was placed under seal, awaiting a decision by the United States as to whether it would intervene and act on the complaint.  On March 3, 3009, the United States filed a notice of election to decline intervention in the matter (Doc. 19).

The complaint, which contained two counts, was subsequently unsealed and served upon Defendants.  Count One alleged False Claim Act ("FCA") violations under 31 U.S.C. § 3729.  On August 20, 2009, Compton withdrew Count Two, which alleged retaliation violations under 31 U.S.C. § 3730 (Doc. 87).

Defendants have filed Motions to Dismiss the complaint.[1]  They contend that the complaint should be dismissed because the Court does not have subject matter jurisdiction over the case.  Alternatively, they ask the Court to dismiss the complaint because it fails to state a claim upon which relief can be granted under Rule 12(b)(6) and because it fails to satisfy Rule 9(b) of the Federal Rules.

---

[1] Since Compton withdrew Count Two, the Court only addresses Count One.

2

The Court has reviewed the motions and briefs of the parties and determines that it can resolve the Motions to Dismiss without the assistance of oral argument.  The Defendants' Motion for Oral Argument (Doc. 95) is therefore denied.

## II.    ALLEGATIONS IN THE COMPLAINT

In August 2005, the federal government decided to provide mobile homes to Hurricane Katrina victims.  To provide the necessary number of mobile homes, the Department of Homeland Security, Federal Emergency Management Agency ("FEMA") entered into a contract with Circle B ("the Contract).  Circle B is a corporation that manufactures prefabricated modular housing.  The mobile homes in this case are by definition not prefabricated modular housing.

The Contract stated that Circle B would provide FEMA an estimated 7,000 standard mobile homes and 1,000 mobile homes designed to accommodate people with disabilities.[2]  For each standard mobile home it purchased, FEMA would pay Circle B $31,695, and for each disability accommodating mobile home it purchased, FEMA would pay Circle B $33,250.   The Contract also provided that Circle B would receive an estimated $30 million in shipping costs, at a rate of $5 per mile.

---

[2]  These numbers were estimates; the contract was for an indefinite amount of mobile homes.

3

The Contract incorporated Federal Acquisition Regulation ("FAR") 52.203-6. The regulation prohibits a contractor from entering "into an agreement with an actual or prospective subcontractor, . . . which has or may have the effect of restricting sales by such subcontractors directly to the Government of any item or process made or furnished by the subcontractor . . . under this contract . . . ." 48 C.F.R. § 52.203-6.

Circle B did not have a license to build mobile homes. To fulfill its contract obligations with FEMA, Circle B entered into subcontracts. The complaint alleges that Circle B subcontracted with Destiny, Waverlee, River Birch, and other companies. The subcontractors had the responsibility of manufacturing and delivering mobile homes to FEMA.

The written terms of the subcontracts stated that the subcontractor would be paid for each mobile home it manufactured and delivered to FEMA. The amount the subcontractor would receive for each mobile home was: $27,695 (for a standard mobile home) or $29,250 (for a disability accommodating mobile home) plus shipping costs. Under these subcontracts, Circle B would retain a profit of $4,000 per mobile home.

The complaint alleges that Jackie Williams and the subcontractors then entered into illegal oral agreements.[3] The terms of the illegal oral

---

[3] Compton also alleges in the complaint that the Defendants often misrepresented to the government the number of mobile homes they had built so that they would be paid more if the government decided to stop ordering mobile homes. Defendants argue that Compton has abandoned this allegation. After reviewing Compton's response briefs, the Court finds that Compton failed to address Defendants' arguments on this allegation. As a result, he has abandoned his FCA

agreements were that Circle B would pay the subcontractors $1,000 per mobile home in exchange for the subcontractors' promises that they would not sell mobile homes directly to the government.[4]   Jackie Williams called Circle B's payments "rebates."   The payments were made from the $4,000 profit retained by Circle B for each mobile home.

Compton alleges that the oral agreements and the "rebates" made pursuant to the oral agreements violated FAR 52.203-6 and the Anti-Kickback Act ("AKA"), 41 U.S.C. § 51-56, and the FCA.  Compton expressed to Jackie Williams and to the FBI his concerns about the oral agreements and the payment of the "rebates" by Circle B to the subcontractors.   On March 2, 2006, Circle B terminated Compton allegedly in retaliation for his whistleblowing actions.  Compton then brought this FCA suit against Circle B and the subcontractors.

## III.   ANALYSIS

---

claim to the extent is based on the Defendants' misrepresentation on the number of mobile homes they built.  See Resolution Trust Corp v. Dummar Corp., 43 F.3d 587, 599 (11th Cir. 1995) (finding that a plaintiff abandons his claim if he fails to respond to an argument or otherwise address the claim).

[4] Specifically, he claims Jackie Williams agreed to pay a rebate of $1,000 per mobile home delivered by Liberty, Destiny, Waverlee, and River Birch.  The total amount paid to them was $2,750,000.  Compton also claims that Jackie Williams agreed to pay a rebate of $1,000 to Destiny for each mobile home delivered by Town Homes, the total amount of rebates was $175,000.  Jackie Williams also agreed to pay $500 to Phil Fowler, $250 to Delmo Payne, and $250 to Gerald Terrell per mobile home delivered.  The total amount of rebates was $6 million.

### a.  The False Claims Act

The FCA provides that any person who undertakes certain specified acts shall be liable to the government for civil penalties for such conduct.  31 U.S.C. § 3729(a)(1)-(7).   Under the FCA, and within certain limitations, a private citizen, who is referred to as a relator, may bring a civil action for violations of the FCA.  31 U.S.C. § 3730(b).

Compton contends Defendants violated 31 U.S.C. § 3729(a), which provides for liability as to any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval," and § 3729(a)(2), which provides for liability as to any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government."   31 U.S.C. § 3729(a)(2).[5]  In addition, Compton alleges that the Defendants violated 31

---

[5]

Compton argues that the amended version of 31 U.S.C. § 3729(a)(1)(2) applies to this action.  Under the Fraud Enforcement and Recovery Act of 2009 ("FERA").  Pub. L. No. 11-21, 123 Stat. 1617, this subsection was recodified as 31 U.S.C. § 3729(a)(1)(B).  Now, the subsection states that a person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" violates the FCA.  31 U.S.C. § 3729(a)(1)(B).

Subsection (a)(1)(B) took effect as if enacted on June 7, 2008, and it applies to all claims under the FCA that were pending on or after that date.  For purposes of the FCA, a "claim" is defined as a "request for demand . . . for money or property."  31 U.S.C. § 3729(c).  The revised version of section (a)(1)(B) does not apply to this case because none of Defendants' claims (the mobile home reimbursement claims) at issue here were pending on or after June 7, 2008.  See United States v. Sci. Applications Intern. Corp., 653 F. Supp. 2d 87, 107 (D.D.C. 2009).

U.S.C. § 3729(a)(3), by conspiring to defraud the government by getting a false or fraudulent claim allowed or paid.

### b. Motion to Dismiss for Lack of Subject Matter Jurisdiction

The Defendants assert that the complaint should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). They argue that this Court lacks jurisdiction over Compton's case because the complaint neither alleges nor contains facts which show that Compton is an original source of the information upon which his alleged claim is based.

The Court has reviewed the allegations and facts in the complaint, and after careful consideration, it finds that it has subject matter jurisdiction over Compton's case.

### i. Federal Rules of Civil Procedure 12(b)(1) Legal Standard

Motions to dismiss for lack of subject matter jurisdiction may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n. 5 (11th Cir. 2009). When reviewing a facial attack, the court asks whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the court takes as true the allegations in the complaint. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). In contrast, when presented with a factual attack on subject matter jurisdiction, a court is permitted to look outside the complaint, and consider matters outside the pleadings. Id.

Because at issue in a factual attack is the trial court's jurisdiction, the court may weigh the evidence and satisfy itself that it has jurisdiction.  Id.

The Defendants attack the factual basis for the Court's jurisdiction. The Court will accordingly evaluate evidence outside the four corners of the complaint to determine whether subject matter jurisdiction is present.

### ii.     Motion to Strike or Exclude Compton's Declaration

Before proceeding to assess whether subject matter jurisdiction exists, the Court considers the Defendants' pending Motion to Strike or Exclude Compton's Declaration (Doc. 94).  The Defendants filed the Motion to Strike after Compton filed the declaration as an exhibit to his response to Circle B's Motion to Dismiss.

As a general rule, the district court must "limit[ ] its consideration to the pleadings and exhibits attached thereto" when deciding a Rule 12(b)(6) motion to dismiss.  Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000)(citations and quotations omitted).  If the Court were to consider the declaration for purposes of resolving the Rule 12(b)(6) issues, it would be obliged to convert the Motions to Dismiss to ones for summary judgment.  Fed. R.  Civ. P. 12(d).

In contrast, the Court need not convert a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) to a summary judgment motion if the Court relies on matters outside the pleadings.  Green v. Forney

8

Eng'g Co., 589 F.2d 243, 246 (5th Cir. 1979) ("A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction cannot be converted into a motion for summary judgment.).

Compton is not asking the Court to consider his declaration in resolving the Rule 12(b)(6) issue.  His entire response brief is dedicated to arguing that it is appropriate for the Court to rely on the declaration in determining whether subject matter jurisdiction exists under Rule 12(b)(1). Notably, he has not asked the Court to convert the 12(b)(6) portion of the Motions to Dismiss into motions for summary judgment.

The Court will not convert the Rule 12(b) portions of the Motions to Dismiss to motions for summary judgment.  As a result, the Court excludes the declaration for purposes of deciding the 12(b)(6) portions of the Motions to Dismiss, but it will rely on the declaration for purposes of deciding the Defendants' Rule 12(b)(1) subject matter jurisdiction challenge.

### iii.        The Public Disclosure Rule

Subject matter jurisdiction in this case is governed by 31 U.S.C. § 3730(e)(4).  That section provides that a court has jurisdiction over a cause of action under the FCA only if the "allegations or transactions" in the complaint have not been publicly disclosed.[6]  If they have, then the plaintiff

---

[6] Whether information is publicly disclosed depends on whether it was disclosed "in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media . . . ."  31 U.S.C. § 3730(e)(4)(A).

9

must be an "original source" of the information on which the FCA claim is made.  31 U.S.C. § 3730(e)(4).

The Eleventh Circuit uses a three-part inquiry to determine if jurisdiction is barred under the public disclosure rule: "(1) have the allegations made by the plaintiff [or transactions] been publicly disclosed; (2) if so, is the disclosed information the basis of the plaintiff's suit; (3) if yes, is plaintiff an 'original source' of that information."  McElmurray v. Consol. Gov't of August-Richmond County, 501 F.3d 1244, 1252 (11th Cir. 2007) (citations omitted).

To determine whether the public disclosure rule bars subject matter jurisdiction in this case, the Court begins with the first prong and asks whether Compton's allegations or transactions have been publicly disclosed. The Court focuses its analysis on determining whether the public disclosures, assuming they fall within the 31 § U.S.C. 3730 (e)(4)(A) sources, are of allegations of fraud or of fraudulent transactions.

The Eleventh Circuit has held the plaintiff's allegations were not publicly disclosed where the disclosures did not allege the defendant engaged in the type of wrongdoing alleged in the plaintiff's complaint. Cooper v. Blue Cross and Blue Shield of Florida, Inc., 19 F.3d 562, 567 (11th Cir. 1994).  Other circuit courts have stated that to trigger the public disclosure bar, the disclosures must allege or describe transactions of fraud by the defendant.  United States ex rel. Feingold v. AdminaStar Fed., Inc.,

10

325 F.3d 492, 495 (7th Cir. 2003) (stating that "public disclosure" occurs when "the critical elements exposing the transaction as fraudulent are placed in the public domain."); United States ex rel. Dunleavy v. County of Delaware, 123 F.3d 734, 740 (3d Cir. 1997) ("[D]isclosures which reveal either the allegations of fraud or the elements of the underlying fraudulent transaction are sufficient to invoke the jurisdictional bar.").

The District of Columbia Circuit created a formula for determining whether the disclosures are of transactions establishing fraud:

> [I]f X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed.

United States ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 654 (D.C. Cir. 1994).   In other words, in the absence of an allegation of fraud, the District of Columbia Circuit requires there be a public disclosure of the essential elements of fraud, which are: a misrepresented state of facts (X) and a true state of facts (Y). Id.

To support their subject matter challenge, the Defendants point to three sources that publicly disclosed facts related to this case:  (1) Fox News and Washington Post reports describing that Circle B used subcontractors to manufacture the mobile homes under the Contract; (2) a Fox News report

11

and letter from FEMA to Circle B explaining that Circle B lacked a license to manufacture mobile homes; and (3) the Contract itself.[7]

The Court has first reviewed the publicly disclosed information cited by the Defendants to determine whether it accuses the Defendants of committing the fraud alleged in Compton's complaint.  The allegation of fraud in Compton's complaint is that the Defendants entered into illegal oral agreements where the subcontractors agreed not to sell mobile homes directly to the government in exchange for payments from Circle B.

Two of the sources containing publicly disclosed information at most accuse Circle B of non-fraudulent activity--lacking a license to manufacture mobile homes and using subcontractors to fulfill its obligations under the Contract.  The third source, the Contract, contains no allegations that the Defendants engaged in wrongdoing. Thus, there is no evidence provided to the Court that publicly discloses that Defendants engaged in any fraud, let alone the type of fraud alleged by Compton in his complaint.

The Court has next reviewed the cited sources to determine whether they disclose the essential elements of the fraud alleged by Compton.  The true facts alleged by Compton are that Circle B made payments to subcontractors pursuant to the unlawful oral agreements with the

---

[7] Compton disputes whether the Contract was even publicly disclosed.  It is unnecessary to resolve this dispute because the Court finds that even if the Contract was publicly disclosed, the Contract does not contain allegations of fraud or describe the transactions underlying fraud.

12

subcontractors.  The terms of the unlawful oral agreements were that the subcontractors agreed to receive payment from Circle B in exchange for their promises not to sell mobile homes directly to the government.  The misrepresented facts attributed by Compton to Circle B are that the Defendants never entered into the unlawful oral agreements and that Circle B never made payments pursuant to the unlawful oral agreements.

The Court finds that the sources containing the publicly disclosed information do not describe the true state of facts.  The facts disclosed in the news reports and letter from FEMA to Circle B merely describe how Circle B lacked a mobile home manufacturing license and used subcontractors to satisfy the Contract requirements.  These disclosed facts do not describe how the Defendants entered into unlawful oral agreements or made payments pursuant to the unlawful oral agreements.  Thus, because the Y variable has not been satisfied, there has been no disclosure of any fraudulent transactions.

Accordingly, the public disclosure bar is not triggered and subject matter jurisdiction exists in this case.

### c.  Establishing a cause of action under the FCA

Before deciding whether Compton's compliant states an FCA claim, the Court must explain what constitutes an FCA cause of action.  To establish a cause of action under the FCA, a relator must prove three elements: (1) a false or fraudulent claim; (2) which was presented, or caused

to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false.  United States ex rel. Walker v. R&F Properties of Lake County, Inc., 433 F.3d 1349, 1355 (11th Cir. 2005).   Each of these elements apply with equal force to 31 U.S.C. § 3929(a)(2) and 31 U.S.C. § 3929(a)(3).  See United States ex. rel Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1309 (11th Cir. 2002) (stating that section (a)(2) imposes liability on entities that knowingly submit false or fraudulent claims to the government for payment or approval); Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005)  (explaining to establish a violation of section (a)(3), a plaintiff must show that a false claim was submitted, defendants conspired to submit a false claim, that one or more actors took an overt act in furtherance of the conspiracy, and that the United States suffered damages as a result of the false claim).

Many courts have also added a materiality element to state an FCA claim.  United States v. Bourseau, 531 F.3d 1159, 1170-71 (9th Cir. 2008); United  States ex. rel A+ Homecare v. Medshares Mgmt. Group, Inc., 400 F.3d 428, 442 (6th Cir. 2005); United  States ex. rel Costner v. United States, 317 F.3d 883, 887 (8th Cir. 2003); United States v. Southland Mgmt. Corp., 326 F.3d 669, 689 (5th Cir. 2003); Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 785 (4th Cir. 1999).

The Eleventh Circuit has not directly addressed the materiality issue, but another district court in the Eleventh Circuit has included the materiality

element in its analysis of FCA claims.  See United States ex rel. Stephens v. Tissue Sci. Lab., Inc., 2009 WL 3363727 (N.D.  Ga. Aug. 13, 2009).  The materiality element requires that the false statement or claim be material to the government's funding decision.  United States ex rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166, 1172 (9th Cir. 2006).

### d.  Establishing the first element: a false claim

Compton alleges in the complaint that Circle B's submission of invoices to the government requesting payment for services under the Contract were false claims.  His logic proceeds as follows: the invoices were false claims because they contained implied certifications that Circle B was in compliance with a material requirement of the Contract (FAR 52.204-6) and a relevant statute (the AKA).  Circle B knowingly violated FAR 52.204-6 and the AKA by making payments to the subcontractors for the purpose of inducing the subcontractors not to sell mobile homes directly to the government.  A submission of an invoice for payment while the Circle B was in violation of FAR 52.204-6 or the AKA was therefore, according to Compton, a false claim under the FCA.

Based on these allegations, the Court finds that Compton is proceeding under an implied false certification of liability.  He contends that Circle B submitted false claims not because Circle B made any affirmative false statement on the invoices, but because Circle B and the subcontractors failed to disclose to the government their unlawful oral

15

agreements and the payments made pursuant to the unlawful oral agreements.   The implied false certification theory holds that a claim for payment can be false where a party falsely certifies compliance with a statute, regulation, or contract provision before it receives payment from the government.   <u>Hendow</u>, 461 F.3d at 1171.   Under this theory, a government payee's claim for reimbursement implies compliance with the governing contractual provisions, statutes, and regulations.   <u>Mikes v. Straus</u>, 274 F.3d 687, 699 (2d Cir. 2001).   If the payee submits an invoice for payment while knowingly violating a contractual provision, statute, or regulation, then he may have submitted a false claim.   <u>United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.</u>, 543 F.3d 1211, 1218 (10th Cir. 2008).

The dispute between the parties is whether FCA liability under the implied false certification theory is limited to situations where the implied false certification is a prerequisite to payment from the government.   Circuit courts that have addressed the implied certification theory have concluded that a claim based on an implied false certification requires the relator to demonstrate that the underlying contracts, statutes, or regulations themselves make compliance a prerequisite to the government's payment. <u>Conner</u>, 543 F.3d at 1218 (citing <u>United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.</u>, 214 F.3d 1372, 1376 (D.C. Cir. 2000)); <u>see also</u> <u>Mikes</u>, 274 F.3d at 700 (reasoning that "implied false certification is appropriately applied only when the underlying statute or regulation upon which the

16

plaintiff relies *expressly* states the provider must comply in order to be paid")
(citation omitted) (emphasis in original); United States ex. rel Hopper v.
Anton, 91 F.3d 1261, 1266 (9th Cir. 1996) (holding that "the false
*certification* of compliance ... creates liability when certification is a
prerequisite to obtaining a government benefit") (emphasis in original).

The prerequisite to payment standard requires the plaintiff to
sufficiently allege that false certification of statutory, regulatory, or
contractual compliance would necessarily have resulted in the government
withholding payment under the contract.  United States ex rel. Coppock v.
Northrup Grumman Corp., 2003 WL 21730668, at *12 (N.D. Tex. July 22,
2003); see Mikes, 274 F.3d at 700; United States ex rel. Kirk v. Schindler
Elevator Corp., 606 F. Supp. 2d 448, 457 (S.D.N.Y. 2009) (stating the
statute must expressly state that a provider must comply with the statute as
a condition of payment).

### e. Motion to Dismiss Under Federal Rules of Civil Procedure Rule 12(b)(6)

#### i. Federal Rule of Civil Procedure 12(b)(6) Standard

The Defendants contend that Compton's complaint should be dismissed
under Rule 12(b)(6) because his claim fails to state a claim upon which relief
may be granted.

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all the
allegations in the complaint and construes them in the light most favorable to

17

the plaintiff.  Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004).  The general rule in federal court is that a complaint need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  However, to survive a 12(b)(6) motion to dismiss a plaintiff is required to provide factual allegations that raise a right of relief above the speculative level. Bell Atl. Corp. v. Twombly, 500 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007).

### ii.     The complaint does not allege that compliance with the FAR 52.203-6 and AKA were prerequisites to payment

To state a false claim under the implied false certification theory Compton is required to plead that the government conditioned its payment to Circle B based on Circle B's compliance with FAR 52.203-6 and the AKA or that the government would have necessarily terminated the Contract based on Circle B's violations of FAR 52.203-6 and the AKA.  Compton does not contend that he has complied with these pleading requirements – instead he argues that such allegations are unnecessary and that he need only show enough facts which create the inference that the government may have chosen not to continue to pay or may have terminated the Contract as a result of the noncompliance.

Pursuant to his view of the law, Compton's complaint only alleges that the Contract incorporated FAR 52.203-6, that the Defendants violated FAR 52.203-6, that they breached the Contract and violated the AKA, and that

18

these violations were made to prevent subcontractors from selling mobile homes directly to the government.  Solely alleging a statutory violation and breach of contract does not state an FCA claim. See Coppock, 2002 WL 1796979, at *13  (dismissing parts of a complaint where plaintiff did not allege that compliance with regulatory and contractual provisions was a prerequisite to the government payment or that noncompliance necessarily would have resulted in the termination of the government contract).  Thus, because he fails to sufficiently allege that a false claim was submitted to the government, the complaint fails to state a claim against all Defendants.  On this basis, the complaint must be dismissed.

### f.   Motion to Dismiss Under Federal Rules of Civil Procedure 9(b)

The Defendants have moved to dismiss Compton's complaint on the basis that it does not describe fraudulent activity with particularity.  When a complaint sets forth a claim of fraud, particularized pleading is required. Fed. R. Civ. P. 9(b).  The particularized pleading requirements of Rule 9(b) apply to actions under the FCA.  Clausen, 290 F.3d at 1308-09.  In an FCA action, therefore, "a plaintiff must plead 'facts as to time, place, and substance of the defendant's alleged fraud,' specifically 'the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'"  Id. at 1310 (quoting Cooper, 19 F.3d at 567-68).  The

19

failure to satisfy rule 9(b) is a ground for dismissal of a complaint.  <u>Corsello</u>, 428 F.3d at 1012.

The Eleventh Circuit has declared that a relator in an FCA action must do more than merely allege a private scheme; the relator must provide within the complaint "some indicia of reliability . . . to support the allegation of an actual false claim for payment being made to the Government." <u>Clausen</u>, 290 F.3d at 1311.

The Defendants argue that Compton has not pled with particularity the Defendants' alleged fraud.  Compton contends that he has met the pleading requirements of Rule 9(b) because there is no dispute that Circle B submitted claims to FEMA under the Contract.

Compton's contention misses the mark.  Not only must he plead with particularity that Circle B submitted claims to FEMA for payment under the Contract, but he also must plead with particularity the underlying fraudulent transaction which gives rise to the false claim.  <u>See Bantsolas ex rel. United States v. Superior Air and Ground Ambulance Transp., Inc.</u>, 2004 WL 609793, at *3 (N.D. Ill. March 22, 2004) (dismissing a complaint where the plaintiff described defendants' alleged fraudulent scheme in only very general, vague terms).

The Court finds that Compton has not met the heightened pleading requirement.  He has not shown with any particularity who committed the fraud, when the fraudulent scheme occurred, the facts constituting the

20

underlying fraudulent scheme that gave rise to the false claims, and how he knows of the fraudulent scheme.   Accordingly, his complaint must be dismissed.

### g.  Compton May File an Amended Complaint

Courts generally allow plaintiffs to amend a defective complaint.  Fed. R. Civ. P. 15(2) ("the court should freely give leave [to amend a pleading] when justice so requires.")  As the Court will explain, even if Compton set forth an allegation that compliance with FAR 52.203-6 was a condition of payment, as a matter of law a violation of FAR 52.203-6 cannot constitute a false claim.  Allowing Compton to file an amended complaint based on a violation of FAR 52.203-6 would therefore be futile.  However, the Court will allow Compton to replead his complaint to the extent it is based on a violation of the AKA because a violation of the AKA may constitute an FCA false claim and the AKA applies to the Defendants' conduct.[8]

### i. A violation of the AKA, not FAR 52.2-3-6, may constitute a false claim

The Court has reviewed the Contract, the FAR, and the AKA to determine whether government payment is conditioned on compliance with FAR 52.203-6 and the AKA.  The Contract gives the government the right to terminate the Contract if the contractor fails to perform any of the contract's

---

[8] The Court is disposed to allow Compton to replead because courts generally allow plaintiffs at least one opportunity to cure pleading defects unless repleading would be futile or otherwise prejudice the defendant.

provisions.  The Contract was also for an indefinite amount of mobile homes, so the government could have stopped ordering mobile homes from Circle B.  There is no express language in the Contract, however, showing that the government's decision to terminate the Contract or to deny Circle B payment based on noncompliance with FAR  52.203-6 was mandatory.  At most, the requirement of compliance with FAR 52.203-6 was a term of a contract.  As has already been explained, a mere breach of contract does not necessarily constitute a false claim.

Likewise, FAR 52.203-6 does not contain any express prohibition of government payment based on noncompliance.  Although the regulation states that a contractor is prohibited from entering an agreement that may have the effect of restricting sales by subcontractors to the government, it is silent as to what remedies are available to the government for noncompliance.  The Court cannot also find any provision within the FAR that expressly requires a contractor to comply with FAR 52.203-6 in order to be paid.  Because the FAR and the Contract upon which Compton relies do not expressly condition payment on compliance with FAR 52.203-6, a violation of FAR 52.203-6 cannot serve as a basis for a false claim under the implied false certification theory.

22

The Court reaches a different conclusion with the AKA.[9] The statute prohibits any person from providing or accepting, attempting to provide or accept, or offering to provide or soliciting any kickback. 41 U.S.C. § 53. It also prohibits the inclusion of a kickback into the contract price charged by the subcontractor.  Id.  The statute provides that the United States may initiate a civil or criminal action against potential violators.  41 U.S.C. §§ 54-55. The United States is also authorized to reduce the amount owed to the contractor by the amount of any kickback paid. 41 U.S.C. § 56(a). The United States may rescind a government contract tainted by kickbacks. United States v. Acme Process Equip. Co., 385 U.S. 138, 146-47, 87 S. Ct. 350, 17 L.Ed.2d 249 (1966).

The Court finds that the AKA expressly conditions payment on compliance.  In making this conclusion the Court applies common sense.  As the Court has stated, a statute must expressly state that compliance is a prerequisite to payment in order for an invoice to constitute a false claim under the implied false certification theory.  It must be clear from the statute

_____

[9]  The Court recognizes that this issue is one of first impression.  To the best of the Court's knowledge, no similar case has been decided by any court.  In support of his argument that a violation of the AKA may violate the FCA, Compton points the court to Morse Diesel Int'l, Inc. v. United States, 79 Fed. Cl. 116 (Fed. Cl. 2007).  The facts of Morse are distinguishable because (1) the contract expressly stated that **the contractor was to be paid for the actual cost of the bonds** and the contractor invoiced for an amount higher than the actual cost; and (2) the contractor signed a compliance form which certified compliance with all contract terms.

that the government will not pay a government contractor if it knows the contractor has violated the statute.

The AKA expressly states that is illegal for a person to include any kickback in a claim for payment to the government. It is clear that the statute prohibits government payment for a kickback. The statute merely allows the government to refuse to pay the kickback before making payment on the contract or to recover the kickback after making payment on the contract.

It follows then that an invoice submitted for payment which includes the cost of a kickback constitutes a false claim because the government is prohibited from paying the amount of the kickback. The fixed-price nature of a contract is irrelevant to this conclusion. If the kickback is included in the fixed-price, then the contract price is inflated and the government would necessarily not pay the inflated amount.

ii.    The AKA encompasses the Defendants' conduct

Compton may file an amended complaint to the extent it is based on a violation of the AKA because the oral agreements violate the AKA, and the payments made pursuant to the oral agreements constituted kickbacks. The AKA defines a kickback as anything paid by a person "which is provided, directly or indirectly, to any prime contractor . . . or subcontractor . . . for the purpose of improperly obtaining or rewarding favorable treatment in

24

connection with a prime contract or in connection with a subcontract relating to a prime contract." 41 U.S.C. § 52(2).  The legislative history to the statute notes that "favorable treatment" should be "construed broadly to reach all instances of behavior which constitute a commercial bribe in connection with a government contract."  H.R. Rep. 99-964 (1986).

In this case, if adequate facts are pled by Compton, then the alleged payments made by Circle B to the subcontractors constitute kickbacks because they were made for the purpose of obtaining favorable treatment in connection with a contract with the government.  The favorable treatment is that the subcontractors could have sold mobile homes directly to the government, but the subcontractors did not make offers to sell, which caused the contract price the government had under the Contract with Circle B to possibly be higher than the contract price the government would have had with the subcontractors.  By way of example, it is possible that Circle B received favorable treatment in the amount of $4,000 per mobile home.  The government could have saved $4,000 for each mobile home by selling directly to the subcontractors because Circle B retained a $4,000 profit pursuant to its written agreements with the subcontractors and under those subcontracts the subcontractors retained a profit.  As a result of Circle B's unlawful payments, the government paid Circle B an extra $4,000 per mobile home.  In any event, the specific numbers are irrelevant.  A kickback is established if there are facts showing that the subcontractors could have

25

sold to the government, that the government could have possibly saved money if it contracted with the subcontractors, and that Circle B's payments were made to keep the subcontractors from dealing directly with the government.   If such facts are alleged, then the payments constituted commercial bribery in connection with a government contract and therefore fall within the AKA's definition of a "kickback."

The Defendants argue that the AKA does not apply to this case because the alleged kickbacks were made by a prime contractor to subcontractors.   According to the Defendants, the AKA applies only to kickbacks made from subcontractors to prime contractors.   In other words, they argue that the AKA is meant to cover "upstream" payments, not "downstream" payments.

The Court disagrees.   The plain language of the AKA prohibits kickbacks, regardless of whether they are "upstream" or "downstream."   The typical kickback scenario involves payments from a subcontractor to a prime contractor for the purpose of inducing the prime contractor to award the subcontractor a subcontract.   Nevertheless, there is nothing in the statute that suggests payments from a prime contractor to a subcontractor cannot constitute kickbacks.

The district court for the District of Massachusetts determined that kickbacks are not limited to payments made up the "contractual chain." United States v. Dynamics Research Corp., 2008 WL 886035, at *18 (D.

26

Mass. March 31, 2008). It noted that Congress rewrote the AKA in 1986 with the purpose of "extending the scope of the statute to any commercial bribery occurring anywhere within the federal procurement system . . . [T]he result is to impose liability on any person who makes a payment to any other person involved in the federal procurement process for the purpose of obtaining favorable treatment." Id. (quoting United States v. Purdy, 144 F.3d 241, 243-45 (2d Cir. 1998).

In sum, Compton's complaint does not fail as a matter of law to the extent it is based on a violation of the AKA.  He is therefore permitted to file an amended pleading.

## IV.   CONCLUSION

For the explained reasons, the Court grants the Defendants' Motions to Dismiss Compton's complaint.  Compton shall have thirty days from the date of this order to amend his complaint.  The stay shall remain in effect until Compton files his amended pleading.

**SO ORDERED**, this the 11th day of March, 2010.

*s/  Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

lmc

27